Case number 17-5075, Abdul Mohamed Waked Fares et al. Appellants v. John E. Smith in his official capacity as Acting Director, Office of Foreign Assets Control of the Department of the Treasury. Mr. Gillingwater for the appellants, Mr. Riley for the employees. Good morning. Good morning. May it please the Court, I'm James Gillingwater from Williams & Connolly for the appellants. Abdul Waked spent nearly 40 years building one of the largest retail businesses in Latin America. Over 5,000 employees, hundreds of millions of dollars in annual revenue, and over 200 stores in 11 countries. This business was effectively destroyed with the stroke of a pen when OFAC designated appellants as drug money launderers under the Kingpin Act. When Abdul Waked challenged those designations administratively with the agency, he received an administrative record that looked like this, a black box. That's the genesis of this due process lawsuit. It was only after the lawsuit was filed that OFAC disclosed summaries, a two-paragraph summary in August 2016 and then a three-page summary in October. OFAC's disclosure violates due process. I don't see any indication that you challenged the redactions, that you challenged the basis for the redaction. We did not, and we're not challenging here the executive's privilege or prerogative to enforce law enforcement sensitive privilege information and withhold that. What we're challenging, and that's not mutually exclusive of OFAC's obligation to disclose evidence in a non-privileged way, and that's what we're challenging. OFAC's disclosure violates due process for two reasons. It's silent as to evidence, and independently, it lacks specific factual allegations that are amenable to meaningful challenge. The upshot of your argument is that it violates due process to withhold classified or law enforcement sensitive information. No, I would frame it another way, Judge Wilkins. The upshot is that it violates due process not to make an evidentiary disclosure. That's an immutable principle that the Supreme Court, in the Goldberg case that we cite on page 3, what OFAC's saying it's done here is redacted all evidence from the administrative record, and then it's disclosed a summary of fact findings. You said below in your opposition to the motion for summary judgment, you said whether OFAC's blanket redactions are appropriate is irrelevant for the purposes of this motion. The requirement that OFAC provide designated persons with an adequate basis to understand their designations is absolute, even if some or all of the evidence underlying the designations is classified or privileged. It's page 12 of your brief. Yes. So how is that different than saying that due process requires that an OFAC designee receive classified or law enforcement sensitive privileged information? We're not requesting access to the classified or law enforcement sensitive evidence. We're requesting access to a non-classified or non-privileged explanation of that evidence. OFAC's been able to provide that in every one of its sanctions cases in which this Court has found due process satisfied. You didn't even ask the district court to review the redacted, the unredacted versions in camera, right? Respectfully, we didn't know what that said. We requested a non-privileged explanation of that evidence. The answer to my question is no, right? You didn't ask for that. That's correct. And that's because, in your view, it didn't matter whether post-deprivation, an independent court, Article III court, could review the evidence. What your claim is is that due process requires you to be able to respond to every, I guess, allegation that's made against your client, right? Due process requires the opportunity to challenge evidence. And that's what the Goldberg case said. It drew a clear distinction between fact findings and evidence, saying that when the agency relies on its fact findings, in other words, its conclusion after its unilateral review of the evidence, it must disclose that underlying evidence to the designated person so that that person can challenge it. And that immutable principle applies in the sanctions context. Again and again, and usually it's been in the terrorist designation case, but it would be parallel to this, that the government does not have to disclose classified information. Now, the difference between this case and those is that, and I think every one of the others, the government has said we've got enough non-classified to where we can establish what we need to establish without disclosing the classified. Right. But in a case in which the government is not making any assertion with respect to non-classified evidence, what is the alternative to the government unless you're saying you just cannot withhold classified evidence? Isn't it necessary that you ask that the judge review it in camera if you can't see the classified? The government properly may rely on law enforcement. There's no classified evidence here. It's all law enforcement. The cases which this is parallel have been classified. Right. The government can redact law enforcement sensitive information, but it has to make an effort to disclose that in a non-privileged way. That effort hasn't been made here. The summary says— I don't understand what that means, disclose that in a non-privileged way. A description, even a non-privileged description of sources, of where those sources come from, dates, places. So, Mr. Gellinwater, I know it feels like we're talking past each other, but just to really simplify, let's say this were just a case of one duty-free shop and one individual who works there who goes to the government and says there's money laundering going on through this duty-free shop, and that individual is presumably—the identity of that individual is protected as law enforcement information. Now, when the government turns around and says your client is designated and generally there's some money laundering going on here, if they get more specific, then they reveal, even without naming the individual, the risk is that they in fact— when you say evidence, if they have testimony of the person and the day that person was on the ship, let's say, that is going to identify the very law enforcement sensitive information that the government you've conceded has a prerogative to protect. So then the question becomes, how does your client get information that is meaningfully concrete so that you know what's being claimed, but the government nonetheless gets to protect that? And when we hear you saying we need evidence, one might translate using my very simplified example that you need to know who, when, where, with a level of specificity that may be in conflict with the maintenance of this law enforcement sensitive information. Right, and I appreciate the question and the example, but we don't even have that here. We don't even have one assertion according to a confidential source. That would make a difference, according to a confidential source, as opposed to— Assuming, though, that—assuming that this is properly law enforcement sensitive information, parallel to what's classified in the terrorist cases, and it's all the evidence that they have, you seem to be saying they have to disclose the evidence to you. If you do it by saying John Smith, or if you do it by saying an employee told us this is what happened, either way you've got the information that is law enforcement sensitive. But we don't even have the assertion that it's a confidential source as opposed to an investigation, an audit, a newspaper article. We can't even challenge that. So that—we're coming down again to where Doug Wilkins started. Did you ask for the alternative of the trial court looking at this in camera to see whether it's properly privileged information and to see whether it meets the requirements of the statute? We did not. We asked for the agency to meet its obligation to disclose evidence, and there's— And if it is all privileged, and then so that you have the obligation butting heads with the privilege, what happens then? Importantly, the government doesn't concede that they cannot make a disclosure in a nonprivileged way of the evidence that they've redacted here. They say they don't have to. They do not claim that they have enough nonprivileged information to establish the requirements of the statute without using privileged information. They haven't made that assertion. They're making the assertion they're not required to disclose evidence, but rather that fact findings is sufficient. It's not a semantic quibble. The Zavaios case in 2016 provides a great example of that. There, despite them invoking the same law enforcement-sensitive privilege they invoke here, direct you to page 25 of the appendix. This is a report from the DEA. It includes foreign court documents, witness statements, news articles, with targeted redactions to protect the name of those sources, but there's a description. Fernando Zavaios transports cocaine, an affirmative description backed up by time, dates, places, sources. Right. So, Mr. Zavaios, what's a little perplexing to us, I think, is I can imagine being in your shoes in the trial court and saying, wait a minute, all that 21 U.S.C. 1903 E protects is the identity of individuals. And, indeed, don't those people have to be so determined by the attorney general in coordination with the director of the FBI? All these pages that are blacked out, they're all the identity of individuals, and yet you didn't push back on that. You just said, sure, we're assuming all of that is covered by 1903 E. And so we're in this appellate position of thinking, why did you do that? And one assumption might be because you thought that if the district judge actually looked at the underlying information, that they would realize that there's plenty of ground for this. And I understand that someone in your position, you know, ex parte in camera inspection is not your first line of due process rights, but it is perplexing why you wouldn't have pushed for narrowing of that. Instead, just admit it. And, respectfully, that's shifting the burden to push for evidence onto the designee rather than on the agency to affirmatively disclose that in a nonprivileged way. For what? For what? We're already in a world of extreme deference to the agency here. There's no pre-deprivation notice. There's no hearing. It's all on a post-deprivation notice. We've already been through all that, so what are you adding by saying we're putting a burden on you to ask for the judge to do an in-camera review? We've faced all that already. We already know they've blacked out everything. We already know they've got the judge to help the case. I see my time has expired. Can I shift from this evidence report to make up? We're interested in asking questions in here. We want to give you time to answer that question. Okay, the question of? What's wrong with, in the case of necessity, shifting the burden to you to ask for the in-camera review? Why couldn't you call upon the district court to do that? To be fair, the agency hasn't complied with its constitutional obligations in the first instance. We could have here, but we push for a disclosure that's constitutionally required. And having not achieved that in the district court, it's not at all clear to me why you didn't then ask, well, there are cases that refer to the possibility of an in-camera review. Can we have that, Your Honor? I don't see why you didn't do that. To be fair, you did ask for a privilege log, which I guess is one way of trying to get some of this granularity from the government and the district court. And just to add a little color to that, OFAC's conceded that this summary consists of hypotheticals. And I'm referring specifically to, on page 390 of the appendix, a bullet point list of an example of what people would do. And they've acknowledged this is a hypothetical illustration rather than a fact. So this is untethered to any sort of evidentiary guidepost that would allow us to distinguish whether the rest of the allegations in here are fact or hypothetical. That alone should give the court pause. Let's suppose they said, our investigation has revealed a hundred different instances of money laundering, and we're going to summarize one of those for you, and they give an account of one of those. Are you saying that that violates due process because you're entitled to a summary of the other 99? But that's not what they're doing here. They're providing something that never happened. This is not a fact. One question, please. I'm trying to understand the import of the test that you want us to adopt here. As I laid out at the beginning, this is an extremely large organization. There needs to be more specifics about transactions and about individuals with whom they've transacted business. A great example of that is the Kinehart's case. That's out of the Northern District. You're not answering my question. I'm going to make you answer my question. Yes, I'd like to. All right, so on page 14 of your brief, you say that what the case law shows is that OFAC is required to provide designees with the unclassified evidence upon which it relied and then an explanation of why it thought this evidence supported a potential designation. But that's not the legal test that you argue on the very next page of your brief where you say that due process requires you to be able to meaningfully rebut the evidence against you. And that's inconsistent also with what you said below in summary judgment that the kind of redactions were and the propriety of them was irrelevant because you're entitled to know what the evidence is against you so that you can rebut it. So I'm going to go back to my hypothetical, is if they said we have evidence of 100 different instances of money laundering and we're going to give you, and here's an example of one of them. The way I read your brief is that that wouldn't satisfy due process because you need to have an understanding of all of the other 99 instances. To go to your first point, and I think as Judge Bellard put it, we're talking past each other, and that's my fault I'm not being clear enough. When we say access to the unclassified evidence, that doesn't mean the document itself. That means an explanation of that evidence in an unclassified way. Again, a description of the source, where it came from, the timeliness. And as the Zavaios Court said, due process was satisfied not only because the designee was able to challenge the adequacy of the evidence but also its propriety. You can never challenge the propriety of a conclusion without the underlying evidence supporting it. And so your example would not be sufficient because it's uncorroborated by any evidentiary explanation. They didn't even make an attempt to do that here. They said according to multiple sources, Abdul-Waqid started laundering money in 1980 for the Medellin cartel. It's really tough to figure out exactly where. This is very unfamiliar territory. I think everybody in the room recognizes for a court. So assume that typically for due process you need to know who it is. You need to be able to cross-examine that person. But when we're in law enforcement-sensitive terrain, you can't necessarily know who the person is. Maybe you can't know the date. So there's going to be some kind of generalizing. The government here thinks it's done exactly what you are asking for. They think they've given airbrushing out some of the revealing specifics, that they've told you why your client has been designated. And I guess just to be somewhat specific, they've said at the Takumen Airport and at the Aurora Airport that these duty-free shops are money laundering. Why isn't that enough for your client to hire an outside firm, do an audit, and present that information and say, Our books are completely conventional. Doesn't that at least drop out those examples? And I have some ideas why that might not be sufficient, but I'd like to hear from you why. Just answer that in two parts. First, the government doesn't say it's done what we've asked for, which is disclose evidence. It, on page 16 of its brief, draws a distinction itself between evidence and fact findings. In the three out-of-circuit cases it's citing, saying you can provide a summary of evidence or fact findings, actually don't say that. They cut the other way. They all require a disclosure of evidence. And the ASSE case is a great example. They quote it for the proposition, A summary of evidence may, in certain circumstances, provide sufficient notice to allow meaningful opportunity to respond. But one of the circumstances cited in the ASSE case in which it didn't constitute adequate notice is when a summary merely attributes factual allegations to, quote, reliable confidential sources. That's not adequate. That's not an evidentiary summary. And that's more than we got here. We just got according to multiple sources. That's point one. Which case are you referring to where you said the summary citing to reliable confidential sources is insufficient? That's the ASSE case citing another Ninth Circuit example where a summary attributable to multiple sources is insufficient. I can find that case for you if you'd like. I got it. I just didn't hear what you said. With respect to your second point, could we do an audit? Yes, and we did. We did a global audit of all the stores. We submitted that, and it found no evidence of money laundering. But that's the exact same audit we would have done had we received no disclosure at all, just generally rebutting allegations of general money laundering. When you say you submitted that audience, who did you submit it to and when? To OFAC, and this was back in March. And it's not part of the record, admittedly, that OFAC cites on page 18. But when OFAC discusses targeted audits we could potentially do to disprove the allegation, it cites four or five showing that they're not targeted at all. And if we disprove the – again, at the Tokoman Airport, there are 40 stores, so it's not a small audit. If we disprove that, well, what about the Sinaloa cartel? There are these massive allegations of connections with huge drug trafficking organizations, and the Kynards case is a perfect example of that. There they received analogous disclosure, redacted evidentiary record, three-page summary. The court found that it did not comply with due process. It was very informative of what OFAC thought that Kynards did, fund Hamas to the tune of hundreds of thousands of dollars. It identified specific officers and fundraisers within Kynards and explained how they had coordinated with Hamas officials to fund the entity. The court said that's not sufficient. Kynards was at least conceivably, at least in part, a legitimate charitable enterprise. It needed specifics about the transactions, how much, when. It needed specifics about the individuals with whom it did business, how they're connected to Hamas. Because Hamas doesn't do business under the name Hamas, any more than the Sinaloa cartel does business under the name Sinaloa cartel or El Chapo. To an even greater extent here, we need specifics. This is a massive enterprise. We need specifics about transactions. We need specifics about individuals the government claims were money launderers. Let me get to my question then. Let's suppose the government says our investigation has revealed 100 different instances of money laundering. We're going to give you the specifics as to one of those, and they give every specific that one could imagine as to one of them. Your position is that it still violates due process because even if you have enough specifics to rebut or attempt to rebut that one, you need that information for the other 99. I wouldn't go that far. I'd say if it's a very specific example, transactions, time, date, stores, people, but even described in a general nonsensitive way, and it was tethered to an evidentiary explanation, again, where that came from and described in a nonprivileged way, that might be sufficient. But we don't have that here. We don't have evidence, and we don't have specifics. We have these generalities. We have hypotheticals. How do we know when specifics are enough? I mean, just for purposes of discussion, there may be situations in which, like my very simplified example, the only evidence is the testimony of an individual. There just isn't other evidence. And that individual's identity, I think we all would agree, may, with appropriate determinations made by authoritative people, be kept secret. Of course. So you're not going to get evidence. You have to just have something, summaries, other information. And the question is how do we know when the information that's been provided is sufficiently specific to satisfy due process? I agree with you, Judge Pillard, that we're sort of in unfamiliar territory here. You know, if it's a legitimate drug trafficker, they're not going to challenge the OFAC designation. They don't care. They don't do business in the United States. They sell drugs. There are not a lot of challenges under statutes like this. So because evidence has been disclosed in every other sanctions case, we haven't had to confront this issue of what's evidentiary and what's not. But it's one of those you know it when you see it kind of deals. And here there's not even been a good faith effort. I can't emphasize that enough. They don't say according to a source whose identity we can't confirm, but that we found to be reliable and corroborated by X, Y, and Z. They haven't even done that. It's not a good faith effort. It's according to multiple sources. That's it. How do we draw the judgment or opinion in this case in your favor if we uphold the right of the government to withhold, and you use the word classified yourself several times, by the way, but privileged information. Yes. If the government can withhold that and we find that they have not done what they should have done here, what is our order going to say they should do when we send it back to the district court? That's the whole purpose of the summary of evidence. If you're not disclosing the evidence, you're just disclosing the summary. Did I ask you whether that was a purpose or not? No, I'm sorry. I asked you what the order should say if we should tell them to do it. The order should say the nature of the privileges isn't challenged, but the government must make an evidentiary disclosure in a non-privileged way that includes specific allegations with respect to appellant's conduct. I'm still wondering what that non-privileged way means. You said that way early in your argument. Yes. I asked you then what it meant. You answered a different question. What does that mean? What are they supposed to do in a non-privileged way? Even the words A, V, words like that are redacted here. You can describe a source in a way that wouldn't compromise that source's safety. Just generally. How do we know there's some way to describe the source that wouldn't disclose the evidence? We know that. You and I have both, well, I assume you have. Many of us have read classified or privileged information before that have been blackouts, and you can sit there and plug it in yourself based on your own knowledge as to what went in the blackout. If we just say the employee at the one store that Judge Fillard is asking about, they're going to know who that employee is. How do we know that there's a way to make this disclosure without making the disclosure? It at least has to be a good faith attempt to describe the evidence in a non-privileged way according to a source that the government, and an explanation, that's what the Kinehart case required, an explanation of why the government relied on that evidence. We found it to be reliable. It can be very basic. That's not even been done here, and we don't know. Do you rule out the possibility in the case of this sort of the judge saying, I'm going to look at this ex parte and in camera? Do you rule that out as a possible substitute compliance for due process where the information is so privileged that it cannot be broken out? Well, that goes back to the PMOI decision in 2010, which called it an open question whether a court could ever look at evidence in camera where the entirety of the evidence has not been disclosed to the accused. If it's an open question, then answer it for me. What are you saying is the status of the possibility of having an ex parte in camera examination by the court? The better result, Judge Sintel, is to require the agency to make an evidentiary disclosure in whatever way it can. It hasn't done that here. It hasn't made any affirmation that it cannot make a non-privileged evidentiary disclosure. It says fact findings. You don't want to answer the question as to whether it could be done by. You said the better way would be to do it the other way. You don't want to give me an answer. Of course it could be done. It could be done, thank you. But the better result, again, is to require evidentiary disclosure. And in the Kinehart's case, the court said, look, if you can't disclose anything, let's look at another option like having a lawyer with security clearance come in to review it. But that's never had to happen before because, again, in every sanctions case, evidence has been disclosed. This needs to be put in context. This isn't a terrorism case. It's not even a Tier 1 kingpin designation by the President. This is a second level designation of a businessman in a 5,000-employee business. This is not the case you want to mark the outer bounds to move the goalposts with respect to how little the agency can disclose to a designated person, and it would if the district court's decision is affirmed or if this evidence-free record is found sufficient. The problem is you're trying to say that, you know, we might hold something very extreme here, but your litigation position has painted you or us into a corner, depending upon how you want to look at it, because your litigation position was extreme. You didn't challenge the scope of the redactions. You didn't ask for the court to find anything ex parte. You said that redactions really was irrelevant because you have an absolute right to know the evidence. So... Some evidence. Don't hold that inartful litigation position against my clients. As Judge Sintel mentioned, there can be an order remaining to the agency, make an evidence-free disclosure consistent with your invocation of the law enforcement-sensitive privilege. That's all we're asking for. Did you ever offer a cleared counsel to look at the information or seek that? We didn't. Again, the distinction between classified and law enforcement-sensitive, we didn't offer that. If the court has no further questions, could I have a... Thank you. Good morning. Nicholas Riley for the government. I'd like to respond to one point. I'm happy to answer any questions the court has, obviously, but I'd like to just start by responding to one point that came up repeatedly during Plaintiff's presentation, and that was the idea that these evidentiary disclosures should specifically identify times, dates, specific stores. I'd just like to put that in context very briefly here. The kinds of organizations that we're dealing with here, the kinds of international global drug trafficking cartels that we're talking about here, when information is disclosed of this type that plaintiffs are seeking, times, dates, specific transactions, they are not going to go about trying to identify the sources who revealed that information in the way that a government goes about ferreting out the source of a leak. They're not going to do due diligence in interviews to find out who specifically released that information. If there were five people at a given front company, an accountant, a lawyer, whatever, or two store clerks that had access to a given piece of information that is then eventually revealed, both of those people, all of those people's lives are put in jeopardy. So I just wanted to make very clear that the law enforcement sensitive information here. Are you taking the position that there is no and non-law enforcement sensitive evidence here that could be revealed? That's exactly right. Every bit of your evidence is law enforcement sensitive. I'm sorry? Every bit of your evidence is privileged, law enforcement sensitive. I wouldn't say every bit of the evidence is law enforcement sensitive. There are some articles I think that are disclosed. Judge Pillard referred to a couple of them in the earlier July disclosures as exhibits that were attacked. There is no undisclosed evidence that isn't law enforcement sensitive. That's exactly right. And the reason why the agency went through and provided the October summary of facts, the August summary of facts, was to provide a more readable and understandable, a distilled version of all of the non-law enforcement sensitive information in the record. Mr. Riley, for some of the reasons that we've discussed, because of the way the litigation went on in the trial court, it hasn't really been pressed, but where do you get the law enforcement sensitive privilege from? The statutory source that I see limits it to the identity of individuals and indeed limits it to invocation by the director of the Bureau. And I'm really at a loss to see how all the redactions in this case could be covered. Sure. So I think just to the statutory provision that I think you're referencing deals with, as I understand it, reports to Congress. So I just want to make clear. I'm just looking for a source for law enforcement sensitive in the materials that we have. Sure. And because there's a concession that this is confidential, it's not classified. None of it's classified. Sure. So I think it's helpful to step back and just understand how OFAC goes about providing this evidence. OFAC's relying on several other law enforcement investigative agencies, each of which have their own regulations and guidelines for determining what material is law enforcement sensitive that are specific to those agencies' needs and investigative methods. The agency OFAC is also relying on information that comes from sometimes foreign governments where there are diplomatic concerns at issue in terms of disclosing information that may have been provided to a U.S. investigative agency in confidence. And I think these are the same concerns that this Court has recognized in past cases. So in GIFRI, where the Court upheld the government's use and withholding of law enforcement sensitive information, it didn't look to— GIFRI also had a statutory source for it. There was an SSI, which is a known thing. I mean, think about us, the position we're in as a matter of judicial review. What role can we have if I don't know what the regulations are of each of the agencies that has applied its own guidelines on what's law enforcement sensitive? And I appreciate that you're playing the clearinghouse role. You're asking all the involved entities, foreign governments, you know, what is bottom line for you? But do you have a role in testing that? What role could we possibly have in testing that? I mean, you know, the risk, as we all know, is that everybody puts forward their, you know, their full wish list of, oh, I don't really want anybody to see this. Oh, I don't really—and, you know, who pushes back on that? It's a fair question, Your Honor. But just one correction on GIFRI. You're right that GIFRI did involve sensitive security information and classified information, both of which are the subject of statutory and regulatory, you know, guidelines that this Court can apply. It also, though, and I think this is important to remember, it also did involve the use of law enforcement sensitive information, and it upheld the withholding of that. And what it cited in the opinion in GIFRI to justify that was a declaration from what I assume was a government agent. And so—I'm sorry. We have no such declaration. Exactly. And I think the reason we don't is because, as Judge Wilkins' questions alluded to and I think your own questions alluded to, the plaintiffs here have not ever sought to challenge the basis for those law enforcement privileged redactions. Now, if they had, and I would hope that if the Court thinks that that's necessary, that it would give the government an opportunity to provide exactly those declarations and to justify, perhaps in camera, what the basis for those redactions were. But that hasn't happened here. And so— I'm not sure about burden. I mean, I'm honestly not sure. But it would seem to me that it might be good hygiene within the government to make sure that when you are asserting such privileges, that there be somebody who is willing under oath to put their name on that assertion, regardless of somebody else's willingness to push back. I mean, we have many cases in which people choose not to. They think it's an uphill battle. They can't afford a lawyer. But they still have the right to have the information not withheld unless— Sure. I mean, I think that sounds right to me. And if that was the practice that this Court requires, then I think that's the practice the government would follow. I just think it is important to note just how unique the posture of this case is. In all of these other cases that we've been discussing, Jiffrey, these other lines of cases, the plaintiffs in those cases did not just raise a due process challenge challenging the adequacy of the notice they received and stop there. They also raised, you know, arbitrary and capricious type challenges, substantial evidence-based challenges that did require potentially in camera view or some looking at the actual full record. That hasn't happened here. And so I think that's part of the reason why there is no declaration from the government. Given where you got to below, you reach the point where this case is just about whether your statement of the summary is enough to give them notice of what they can reply to for due process purposes. It really is hopefully difficult to see how you can say that they could respond in a due process satisfying way to that little summary that you gave. If they had asked for it, would it not have been in order for the court below to have provided an in-camera review? If they had asked for it, I think that would have been appropriate. Although in this case, you know, subject to the usual coordination with government to make sure that disclosures of sensitive information aren't made. But again, I want to emphasize in this case, because their challenge was just focused on the adequacy of the notice that they received, the court could make that determination as the district court did here based on examining that notice without looking at the record in camera. But they're related. I mean, their position assumes, in a sense, the more detailed versions of the argument that we've been articulating from the bench, which is that you have over claimed on law enforcement sensitive information by saying, hey, you haven't done enough. They have really pressed that case. You need evidence. You need time, place, you know, at least CI, you know, identification. I mean, is there not one padded invoice that ever could be revealed? You know, you talk about this as this vast operation. There's not a single document in the record. I mean, that's the determination that these investigative agencies made. And, again, I want to be clear. Even the example you've given, that one padded invoice, really does run these very real risks for the reasons that I think I identified at the top, which is that if five employees, for instance, had access to that one padded invoice, they're all placed in jeopardy. It's not necessarily that because the one padded invoice was limited to, you know, like this set of employees that, well, the cartels are just going to sit back and say, well, we can't figure out who it is. Believe me, that crosses my mind too. Understanding all of that, there is still a due process requirement that people who have a deprivation have a right to notice and hearing. Now, understanding that in classified cases and in other privileged cases, we have found ways to limit that and still make a post-deprivation due process adequate. The ones I've seen had a lot more information in the non-classified disclosure than what you have in the non-privileged disclosure here. We have said, at least by way of dicta at times, that a judge could use an in-camera proceeding, an ex parte proceeding, as a substitute. We've suggested that possibility. Nobody suggested that below. They didn't ask for it. You didn't volunteer it. Do I hear you saying now that that would have been a way in which you could have provided more due process than what this terse summary does? I don't know that it would have provided more information than what's in the summary. I think it would have provided, I think, and this is just— A substitute. A substitute, right. I think it would have provided grounds for the government to then have to justify the law enforcement-sensitive determinations that it made, either in the form of a declaration or something along those lines. So, yes, I think it would have provided some grounds for addressing the concerns that they've raised. I do want to just push back a little bit on this notion, because I agree, this is a short summary, but I do want to say that— It's very uninformative. It really doesn't give them much they can rebut. Right. So I'd like to push back against that just a little bit, Your Honor, because I think it does contain several specific allegations. They focused on some of the broader ones, but Judge Pillard alluded to this, saying that they used the La Riviera duty-free stores in the Tacomin Airport in Panama City to smuggle bulk cash in suitcases aboard commercial airlines and that they used that to launder millions of dollars from Colombia to Panama is very specific, and they have not provided any response to that specific allegation anywhere in their papers to say that that's too vague. There are other allegations in the summary that I think are also highly specific. The allegations involving Ali Harb, who's a designated narcotics trafficker. This is at page 391 of the Joint Appendix. It says, In 2014, one of Joaquin Farris's major clients was Ali Harb, who we know is a designated trafficker, it says earlier in the summary. Joaquin Farris supplied Harb with home appliances that had been paid for in Panama. So we're not just talking about a time period, 2014, and a specific individual who we know has been designated, Ali Harb. We're also talking about the specific lines of businesses that they used to launder money. Now, plaintiffs took issue with the use of the word major clients, and I think they wanted to read that as saying that Ali Harb may or may not have been a client of the home appliance business. It's very clear from, I think, reading the summary that clients here refers to clients of the money laundering organization, and that's a very specific allegation. I mean, this is admittedly difficult, and I hear you about the law enforcement-sensitive interests, but I also, you know, we're really in an area of constitutional magnitude, and you say these are very specific. There are no dates. The way the government briefs this, I don't even know if they're talking about Spain as in Spain or Spain as in Argentina, you know, China as in China or China as in the Cayman Islands. I mean, it's really, and would, when I see somebody testifying in a criminal case about what would happen, my ears perk up. That's not something that person witnessed. That person is extrapolating about courses of conduct over time, and it's very unreliable. So I'm not sure, so specific, I mean, one of the things, for example, if you have a legitimate business that has been designated, what are the, can you list for us, what are the allegations that this designation burdens them to refute, and that if they were to successfully refute, they would be undesignated? What are those allegations? Right, well, I think. What's the target for them? Sure. And you said La Riviera, Ali Harb, what else? There's allegations, or I'm sorry, there's findings regarding some of their specific real estate ventures, the Soho Mall, Millennium Plaza, the specific types of transactions they used in connection with those real estate ventures. This is also on page 391 of the joint appendix. Development, their accounts with development and construction companies, the purchase of supplies and other equipment used in the construction of those projects. So I think, you know. Do we have time periods? Well, for the Ali Harb allegation, you do. One year, 2014. That's right. Do we have time periods for the others? We don't, but again, I want to, that's right, we don't. But one, the allegations early in the summary make clear that this was happening over a period of time. Now, again, we can see that that's not specific, but revealing specific dates, for the reason I said at the top, actually does raise problems here. And if I could just address, you alluded, I think, Judge Piller, to the hypothetical on page 390 involving Spain. I want to be very clear, because this was a point that was raised in the reply brief. The district court found, we think correctly, that that hypothetical, and I think we think it's clear from reading the summary, was intended to communicate the specific methods that were actually used. It's an illustrative hypothetical because the details that are filled in there, the location of the drug dealer, the dollar amount, $5 million, the end placement of some of the money, China, those are details that were made up to illustrate exactly how this operates. But the methods that were used were, in fact, used. And the government, again, for the reasons I alluded, and I don't want to sound like a broken record here, cannot fill in all of those details for every example because to do so would compromise. We understand that part. You don't have to read it. Right. We know that's why we're here. What – I don't even understand this summary. Can you explain it? You say a Colombian drug trafficker has $5 million in Spain to be collected. So this is a drug trafficker that has sold drugs and earned this money from that and has in hand a lot of cash. That's – I mean, that's one way of – I should just say there's other ways in which a drug trafficker could end up with lots of cash. But, yes, that's – I'm just trying to understand what you – what the government has written. Why don't you explain in your own words what this hypothetical explains? Sure. So what it explains is when you have the end product, whatever trafficking activities the drug dealer has engaged in, they're in some other country outside of Panama, outside of Colombia. In the example of Spain, they have $5 million. Typically it's in cash, and that's not a useful form to have $5 million in if you want to use it in large amounts of money. And so what they do is they give that money to members of this money laundering network in Spain who then deposit it in a variety of different accounts, dividing it up. That is, the – And meanwhile, the money laundering organization pays them. Right. So the money – I just want to – right. I think sometimes we think of money laundering as being it's the exact same – you know, the dollar that I put into the money laundering operation comes out clean and I get it back. In fact, that's not how it works. Minus a commission. Minus a commission, right. But what this example is actually showing is what happens is that money in Spain is deposited into various accounts. Like I said, that money is then used and funneled into legitimate businesses that – or legitimate business needs that the money laundering organization, in this case the Joaquin Ferris organizations and their various lines of businesses, might need to purchase, for instance, supplies. So if the Joaquin Ferris, say it's Grupo Wisa, needed to purchase, you know, various goods that it's going to then sell at its duty-free stores in Panama and needed to purchase some of those goods in Europe, it would use that money that's already in Spain after it's been, again, deposited in different accounts to make it difficult to track to purchase those goods. Those goods then, it would be using this money to funnel those goods back into its legitimate business lines. Meanwhile – But you lost me back in step two. So that money laundering organization is going to pay the traffickers. In what form? Right. So this takes various forms, but oftentimes it's paying the traffickers who control front companies in Colombia, in Panama, in various parts of Latin America for the clients that we're talking about here. So if you're the – say you're the trafficker that, in this case, starts in Spain, you control various front companies or your associates control front companies or businesses, sometimes they're legitimate businesses, in Latin America, where you might have this kind of false invoicing regime that we've alluded to. Those businesses purchase goods that don't, in fact, exist and are paid or sell goods that don't, in fact, exist and are paid money for those goods in their – at those businesses in Latin America. I do want to just make clear as I'm saying this, there are any number of forms in which this process can take place, and that's why we provided an example that filled in some of the details just to make it a little bit easier to understand. There are no – we can't obviously identify a specific set of transactions that give rise to a specific incident of money laundering. I appreciate that, and therefore what this is is simply saying money laundering. It's really not saying anything more than that. Respectfully. More concrete. I don't think that's quite right. I think, again, you could fill in the exact illustration that we've been discussing with the very designated companies that are discussed at other points in this summary. Grupo Visa, Balboa Bank, the transactions related to the Millennium Plaza and Soho Mall. But to do that with specific dollar amounts and on specific dates, I think, again, would compromise law enforcement-sensitive information. But the information is there. We can only show it from different – But I don't take you to be disagreeing with me. All this is saying is money laundering by Grupo Visa and the others named. It really – I mean, and what you're saying is yes, that is all it says, and it cannot say more. Well, I think we're saying yes. The second part is certainly true. The first part, I think there is saying more than just money laundering occurred. It's identifying the institutions that were used to launder this money and the specific methods. Money laundering occurred through this business and its major arms. It's a duty-free business. It's a mall construction business. It's a banking business. Is there any part of this business that you haven't claimed is involved? Yes, in fact. Grupo Visa is a – or was at the time of the designation a company that had, you know, a number of subsidiaries that were engaged in various lines of businesses. And I do think we're giving a little bit more than just saying it's X, Y, Z lines of business. The Ali Harb allegation, I think, is a good example where it talks about a specific line of business at a specific time period. It's a year. It's not a specific date, but a specific time period. And a specific individual, a specific narcotics trafficker. So there is linking up some of this information in a way that I think is rebuttable. And just to illustrate this point, I think it's helpful to note, and I don't want to go too far out the record here, but because plaintiffs raised this audit that they submitted to OFAC in March, that audit does exactly some of these things. It focuses on the specific transactions at some of these duty-free stores. And I should note, that audit, although they frame it in their brief as though they undertook this audit at the suggestion of the district court, the audit was submitted in March of 2017, a month before the district court issued its ruling, and obviously the audit process had to be commenced much earlier than that. So this is at the stage where the only information they have is this summary, and they have gone about trying, even before the district court's decision, to try and find ways to go about rebutting it in exactly the method that we've identified here. And they submitted it to the government, but not to OFAC, but not to the district court? That's right. It was part of, as I understand it, and perhaps they can address this more in rebuttal, as I understand it, it was part of the delisting request, that is their request to be removed from this designation list in March of 2017, while the summary judgment briefs were pending before the district court. So that's right, it wasn't before the district court, and it's not a part of the record here. I only brought it up because it had come up in the briefs and during the presentation, but I think it does illustrate that there are ways that they do have a target to shoot at. There are ways that they can go about trying to rebut some of these specific allegations. How and why was the government in a position to delist Ms. Romo? Yeah, Ms. Romo's delisting was based on actions that she took subsequent to the designation to remove herself from the employment of and affiliation with the designated entities and individuals. So it was not based on, you know, her claim or any evidence she submitted to show that the original substantive money laundering findings were inaccurate. It was based on her simply saying, I'm no longer involved with these people, and that's what the delisting for her was based on. I should just note that this delisting process, just because they came up, the March 2017 delisting request that all the plaintiffs filed, those remain pending before the agency, and those are ongoing. The agency met with plaintiffs' counsel about those delisting requests in October. I think as recently as last month, Waukead-Darwich and Waukead-Ferris were still submitting information to OFAC as part of that delisting request. That's just a separate parallel proceeding, but since it came up. So I don't take you to dispute that the government would be willing to have declarations from the various involved agencies asserting that everything that they have redacted, has been redacted at their request, is in fact necessary to redact because it's law enforcement sensitive. That would not be a problem for the government. That's right. The government, I think, would be more than willing to provide declarations justifying the redaction. Again, they haven't done it here, as the court knows, because we didn't take and the district court didn't take plaintiffs to be challenging that. But yes, I think that's information the government could provide. And the government would be able to arrange for either this court or the district court or both to look at the information. Right. Again, subject to the usual coordination with the law enforcement agencies and the ordinary procedures to ensure that sensitive information isn't disclosed. Thank you very much. Thank you. Just to start with a point that you raised, Judge Ballard, essentially what this is saying is that Grupo Huiza laundered money through its various business facets. That's exactly what the press release said. That's what the designation notice said. If that's all that's required, that renders the right to post-designation notice meaningless if you're just repeating what you said in the designation. You're right as to time periods. This begins beginning in the 1980s, moving to the 90s, moving on to 2000. That's as specific as it gets. In terms of the specific examples identified by the government, allegations relating to Nadal Wocked, Balboa Bank, Millennium Plaza, we raised this in our brief, and that's why this is so problematic, this blanket redaction, is when we got this administrative record, it wasn't just redacted. Various parts of it were entirely withheld, and the justification given for withholding those entire parts were that they related to individuals, Nadal Wocked, Balboa Bank, Millennium Plaza, that were irrelevant to plaintiff's designations. The government said that in the briefing below. They did not pertain to appellant's designations, which was puzzling at the outset because if they're saying that Abdul Wocked is the co-head of a money laundering organization, how can evidence relating to other members of that organization be irrelevant to the designations? But now we have this summary. Well, again, you didn't challenge those withholdings below, and you didn't ask the district court to examine that in camera or to, I guess, overturn and compel the government to produce those things that had been withheld, right? We're taking the government's representation at face value as we have to, but then we get this evidentiary summary linking every allegation to Nadal Wocked, linking allegations to Balboa Bank, linking allegations to Millennium Plaza. We don't know if this is framed disjunctively when it says Abdul Wocked and Nadal Wocked. We do know that OFAC said that that's irrelevant to the designations. In terms of the allegation with respect to Ali Harb, again, it says that's their most specific allegation, and it says that Abdul Wock had sold home appliances to him. That's what it says. The designee shouldn't have to fill in the gaps here. Absent any evidence in the admission of hypotheticals, the government's lawyer said that some of the stuff in here is made up. Yes, we have brought a narrow challenge here to the sufficiency of these disclosures. That's because the Kingpin Act is an extraordinarily powerful tool. We agree with that power. We're not challenging that power. We're challenging its implementation. Precisely because it's so extraordinary, it has to be applied in a responsible, constitutional way that gives the designated individuals the opportunity to meaningfully challenge the designations. That wasn't done here. The district court's orders should be reversed, and summary judgment granted for the appellants. Thank you. Thank you.
judges: Pillard, Wilkins, Sentelle